```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| I.Z. | : | CIVIL ACTION |
| v. | : | |
| CITY OF PHILADELPHIA, et al. | : | NO. 17-1517 |

MEMORANDUM

Bartle, J.                                              October 30, 2017

Plaintiff I.Z. filed this lawsuit pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution against defendants for improper searches, retaliation, and excessive force.[1] Defendants include the City of Philadelphia, Philadelphia Department of Prisons Commissioner Blanche Carney, and Warden Michele Farrell.[2] Before the court is the motion of these defendants to dismiss Count III and Count VIII of the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

1. Plaintiff has filed this action using his initials only for privacy reasons.

2. Plaintiff has also named as defendants the Deputy Warden, Shift Commander, a nurse, and several correctional officers employed at Riverside Correctional Facility. Defendants Marcella Moore and Mariben Geonzon Gonzalez have been served but have not joined in this motion or otherwise responded to the complaint. The remaining defendants have not yet been served.

I.

When deciding a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

II.

The following facts from plaintiff's complaint are taken as true for present purposes. Plaintiff is a transgender individual who was assigned the sex of female at birth but now identifies as and lives as a man. On or about November 6, 2016, plaintiff was brought to the Riverside Correctional Facility as a pretrial detainee. Riverside is a facility within the Philadelphia Prison System that houses women.

At the time of his arrival at Riverside, plaintiff informed prison staff that he is male. He was then subjected to three searches conducted specifically to determine his gender. During the first search, plaintiff was instructed to remove all clothing and spin around. Plaintiff then underwent a second search, wherein he was instructed to squat and cough while naked. Thereafter, a lieutenant or captain arrived and questioned whether plaintiff had "the surgery" and whether he had already been searched. Plaintiff declined to answer whether he had undergone surgery but responded that he had, in fact, been searched twice already. A sergeant then arrived and escorted plaintiff to a nurse in the medical unit for a third search. The nurse conducted a penetrative genital examination while I.Z. lay naked on a table with his legs spread. As a result of this search, the nurse and the observing sergeant labeled plaintiff as female. Afterwards plaintiff was informed by a nurse that these genital searches are conducted as a routine matter by the Philadelphia prison system to determine gender identity. Plaintiff was also informed that inmates are sent to a male prison if they have a scrotum.

Plaintiff contends that Riverside prison staff consistently misgendered him by referring to plaintiff as "she" or "her" instead of "he" or "him." Plaintiff also alleges that prison staff repeatedly made offensive and vulgar comments about

-3-

his gender identity, including stating that "I'm not calling [plaintiff] 'he' until she grows a dick," referring to plaintiff as "just a bitch with hair" and a "trannie," and telling plaintiff "[y]ou are in a women's prison ma'am and you're a girl." Plaintiff filed grievances about these incidents as well as the initial searches. In retaliation for voicing his complaints, plaintiff was denied shoes, threatened, subjected to disciplinary action, and ultimately was pepper sprayed while shackled and handcuffed. Plaintiff alleges that he has suffered physical and mental anguish, including post-traumatic stress disorder, and a loss of dignity as a result of defendants' actions.

## III.

We turn first to defendants' motion to dismiss Count III of the complaint, which pertains only to the City of Philadelphia, Commissioner Carney, and Warden Farrell. Defendants first assert that plaintiff has failed to state a claim for municipal liability against the city under <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978). According to defendants, plaintiff has merely set forth conclusory allegations that paraphrase the elements of <u>Monell</u> liability and has failed to make sufficient factual allegations regarding the conduct of a municipal decision maker as required under <u>Monell</u>.

> Section 1983 provides:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. Under § 1983, a municipality may not be held liable for constitutional violations on a vicarious liability theory rooted in respondeat superior. Mulholland v. Cty. of Berks, 706 F.3d 227, 237 (3d Cir. 2013) (citing Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)). Instead, a municipality may be held responsible only "when the injury inflicted is permitted under its adopted policy or custom." Id. (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)). Based on the Supreme Court's reasoning in Monell, courts have recognized a "two-path track" to municipal liability under § 1983:

> Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

Id. (quoting Andrews, 895 F.2d at 1480). Custom may also be established by "evidence of knowledge and acquiescence." Id. (quoting Beck, 89 F.3d at 971).

In his complaint, plaintiff has claimed that he was informed by a nurse at Riverside that genital searches are conducted to determine gender identity as a routine practice and that all inmates with scrotums are sent to male prisons. The complaint also alleges that plaintiff was subjected to continuing oral harassment as well as retaliation for voicing his complaints regarding the search and his treatment at Riverside. Plaintiff has alleged not the single action of a rogue prison staff member, but rather a coordinated effort which included prison staff at the supervisory level. These allegations are sufficient to state a claim of a municipal policy or practice under Monell.

Defendants further assert that the claims against defendants Carney and Farrell should be dismissed because plaintiff failed to allege sufficiently that they were personally involved in, or had actual knowledge of and acquiescence in, the alleged wrongs. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Defendants' argument misses the mark. A municipality, like other entities, can act only though individual employees or officers. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 835 (1985). As discussed above,

under § 1983 the conduct of an employee or officer gives rise to liability for a municipality only when that conduct implements an official policy or practice. See Monell, 436 U.S. at 690. An individual's conduct implements official policy or practice under several circumstances, including when the individual is a policymaker with final, unreviewable discretion to make a decision or to take action. Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006); Andrews, 895 F.2d at 1481; see also Keenan v. City of Phila., 983 F.2d 459, 468 (3d Cir. 1992). As discussed above, Carney is the Commissioner of the Philadelphia Prison System and Farrell is the Warden of Riverside, the specific institution where plaintiff was incarcerated. Plaintiff has alleged that these defendants implemented and maintained the policy or practice he challenges regarding the search and classification of transgender inmates. Accepting these allegations as true and drawing all reasonable inferences in favor of plaintiff, as we must do on a motion to dismiss, plaintiff has sufficiently alleged claims against Carney and Farrell.

Defendants further challenge plaintiff's claim that defendants failed properly to train and supervise prison staff to treat transgender inmates in a humane manner. Defendants may be liable for a failure to supervise or train staff only where defendants acted with deliberate indifference. City of Canton

v. Harris, 489 U.S. 378, 392 (1989).  This can be shown through the existence of a pattern of tortious conduct by inadequately trained employees, or in some circumstances through a single instance where there is a strong likelihood that the situation will recur and that an officer lacking specific tools to handle that situation will violate citizens' rights.  Berg v. Cty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).  Here, plaintiff has alleged that improper searches of transgender inmates occur as a matter of course.  Plaintiff has also alleged that he was subjected to a campaign of harassment regarding his gender identity by multiple staff members, in addition to repeated acts of verbal reprimand and physical retaliation for voicing grievances.  We find these allegations sufficient to allow plaintiff to proceed under a failure to train theory.  Accordingly, the motion to dismiss Count III of the complaint will be denied.

IV.

Finally, defendants have moved to dismiss Count VIII of the complaint, which seeks to impose vicarious liability on the City of Philadelphia for the state law torts of intentional infliction of emotional distress, assault, and battery.  As defendants correctly assert, these claims are barred by the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541 et seq.  Plaintiff has consented to dismissal of this

count and therefore the motion of defendants will be granted as to Count VIII.